**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carlton C. DRAPER, Defendant-Appellant.**

**No. 17012.**

United States Court of Appeals Seventh Circuit.

June 17, 1969.

Frank W. Oliver, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, Lawrence T. Stanner, Asst. U. S. Attys., of counsel, for appellee.

Before MAJOR, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

MAJOR, Senior Circuit Judge.

Defendant Draper was charged by indictment with receiving, concealing, buying and selling heroin, in violation of Title 21 U.S.C.A. Sec. 174. His first conviction, following a jury trial, was vacated on the premise that the jury had been improperly instructed. The case was retried, again by a jury which, on March 28, 1968, returned a verdict finding him guilty. From a judgment entered thereon defendant appeals.

The case is here solely on the basis that the court erred in its refusal to allow defendant's motion for judgment of acquittal made at the close of the evidence. The motion stated "that the defendant had shown a prima facie case of entrapment and that the government failed to carry its burden at that stage of showing that the defendant was not induced to commit the offense, or if he was induced to commit it that he had a previous disposition to commit it, had adduced no evidence to negate the defendant's contention that the heroin was originally placed in his hands by the informant, and had otherwise failed to prove a prima facie case."

Defendant's counsel, evidently in an effort to escape the rule, established by many cases, that ordinarily the defense of entrapment presents a jury question, contends that this is not a "standard entrapment" case. He argues that Hernandez, from whom defendant admittedly obtained possession of heroin, was an admitted government informer; that the conduct of the latter was "shocking or offensive per se," and that the government did not sustain its burden of rebutting defendant's testimony as to the circumstances under which he received possession of the heroin. This contention rests on the failure of the government to call the informer as a witness.

■ We think there is little, if any, merit in defendant's contention. Even so, we are disposed to make an abbreviated statement of the evidence, keeping in mind the general rule that it must be considered in a light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Weaver, 360 F.2d 903 (CA–7), cert. den. 385 U.S. 825, 87 S.Ct. 57, 17 L.Ed.2d 61.

Federal narcotics agent Jordan testified that he watched as the informant, Hernandez, dialed defendant's telephone number and that he secured Hernandez' permission to listen in on the call. The agent recognized defendant's voice. Hernandez asked if it was defendant and was told it was. Hernandez said he had a buyer for the heroin. Defendant said, "If the purchase goes down, I don't want to meet anybody. Just come alone." Hernandez said that would be fine. Defendant then said, "I have two ounces and the price would be twelve hundred dollars." Hernandez agreed to call defendant on Friday, June 16, 1967, at 10:30 a.m.

On Friday, agent Jordan again observed Hernandez dial defendant's number, and listened in on the phone conversation. Defendant answered. Hernandez said everything was ready and asked if defendant was ready. Defendant said he was, and reiterated that he had approximately two ounces and the price was twelve hundred dollars. Defendant instructed Hernandez to meet him at the twenty hundred block of North Halsted Street at about noon.

Agent Jordan was then joined by agent Kuksta, and they followed Hernandez to the appointed meeting place, where they parked 100 feet from Hernandez' car. A short while later defendant and a girl crossed the street and got into Hernandez' car. After a short wait, the agents left their car and on reaching Hernandez' car saw defendant holding several aluminum foil packets, one of which he had open, and in this aluminum packet was a quantity of white powder. The agents then arrested defendant and the girl. After his arrest, defendant said he had only one thing to say and that was that the girl was not responsible for anything that happened.

Agent Kuksta corroborated agent Jordan as to what transpired at the time of defendant's arrest.

Defendant testified that he was acquainted with Hernandez and thought it possible that he was in the drug traffic but denied any drug transactions with him. He admitted that on June 16, 1967, he entered Hernandez' car and "gave him his package," a package which Hernandez had brought to defendant's house and left in his keeping two or three weeks before defendant's arrest. Defendant testified that Hernandez, at the time he gave defendant the package, stated, "Here, set on this for me." Defendant admitted to numerous telephone conversations with Hernandez as testified to by agent Jordan, but denied that either the word "heroin" or the words "twelve hundred dollars" were mentioned. Defendant testified that when he entered the car shortly before his arrest he stated, "Here, man," and threw

the package on the seat. Hernandez opened the package, looked at it and made no reply when defendant asked him why he was looking at it.

Cheryl Sheain, who was in the car with defendant at the time of his arrest, testified that Hernandez asked defendant if he had the package and said he wanted to see it.

■ Defendant's contention that he was entitled to a directed verdict on the ground that the government failed to call the informer as a witness to rebut defendant's testimony is without merit. The testimony of agent Jordan as to the means employed by the informer to purchase the heroin, the agreement as to price and quantity, and defendant's insistence on secrecy, is wholly inconsistent with that of defendant that the heroin was left in his possession by the informer only for the purpose of later being reclaimed by him. Certainly this contradictory testimony was sufficient to present a jury question.

In Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, under a factual situation quite similar to that here and where the informer was not called as a witness, the court in deciding the issue adversely to the defendant stated (page 388, 78 S.Ct. p. 828–829):

"As for [the informant], petitioner testified that the informer engaged in a campaign to persuade him to sell narcotics by using the lure of easy income. Petitioner argues that this undisputed testimony explained why he was willing to deal with [the agent] and so established entrapment as a matter of law. However, his testimony alone could not have this effect. While petitioner presented enough evidence for the jury to consider, they were entitled to disbelieve him in regard to [the informant] and so find for the Government on the issue of guilt. Therefore, the trial court properly submitted the case to the jury."

This court in United States v. Caro, 350 F.2d 862 (CA–7 1965), followed Masciale in a case where the defendant,

as here, testified that he had been approached by the informant to act as his messenger in giving a package to the undercover agent. Quoting the Masciale language excerpted above, we held that the defendant's testimony, unrebutted by the informant, did not establish entrapment as a matter of law but merely created a question of fact to be resolved by the trier of fact.

This court again considered the effect of a missing informant in United States v. Simons, 374 F.2d 993 (7 Cir. 1966), cert. den. 386 U.S. 1025, 87 S.Ct. 1382, 18 L.Ed.2d 464. There we stated (374 F.2d page 995):

"We see no merit in this case in the contention that entrapment was established as a matter of law. The testimony favorable to the government shows that Simons readily entered into the transaction with the agent."

In United States v. Pugliese, 346 F.2d 861 (CA-2), the court in reviewing a narcotic conviction (the informer was deceased at the time of trial), citing Masciale stated (page 862):

"We need not decide whether defendant's testimony, if true, warranted a directed verdict in his favor. The jury was entitled to disbelieve defendant's version of the facts and to rely only on the evidence presented by the government."

Defendant poses the question, "Can it seriously be contended that the act of a government agent in placing a narcotic in the hands of the defendant, and then procuring his prosecution for possessing it, is not offensive and shocking per se, despite the trial judge's belief to the contrary?" A number of Illinois cases are cited which purportedly require an answer favorable to defendant. It will be time enough to answer this question and consider cases relied upon by defendant when we are confronted with a pertinent factual situation. The fallacy of the contention, of course, resides in the fact that a response favorable to defendant would require the jury to accept his testimony and ignore that of the agents. This,

as we have shown, the jury was not required to do.

The informer's identity was known to the defendant; in fact, they were long-time acquaintances. There is not even a suggestion that the government sought to conceal his identity or to prevent his presence at the trial. The record shows that the government made a reasonable effort to procure his attendance. The prosecutor talked to him the day before the trial and not only obtained his promise to be present but served a subpoena on him calling for his attendance.

No case is called to our attention and we know of none where it has been held under similar circumstances that the government's case must fail because it did not produce the informer as a witness. Whether the informer was produced or not, there was still the question from the testimony the jury heard whether it should credit the testimony of the defendant or that of the agents.

The judgment appealed from is

Affirmed.