UNITED STATES of America,
Plaintiff-Appellee,

v.

Henry STAHL, Defendant-Appellant.

No. 16146.

United States Court of Appeals
Seventh Circuit.

March 12, 1968.

John J. Cleary, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Lawrence E. Morrissey, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before DUFFY, Senior Circuit Judge, and CASTLE and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

The defendant-appellant, Henry Stahl, prosecutes this appeal from the judgment of conviction and sentence entered following a jury trial on an indictment charging him[1] with robbery of a federally insured savings and loan association, committed with the use of a dangerous weapon, thereby placing the lives of the employees and customers of the association in jeopardy, in violation of 18 U.S.C.A. § 2113(a) and (d). The defendant was sentenced to imprisonment for a period of twelve years.

The defendant seeks reversal of his conviction on the grounds that (1) he was denied the effective assistance of counsel at arraignment and at the trial, and was denied the opportunity of conducting his own defense; (2) denial of his motion for a bill of particulars was prejudicial error; and (3) comment of the trial judge concerning the function of § 3500 statements improperly influenced the jury.

The defendant was arraigned on September 22, 1966. The appointed counsel who had represented him and the co-defendant, Lesczynski, before the United States Commissioner requested leave to withdraw from his representation of the defendant on the basis of conflict arising from his representation of Lesczynski. The latter had previously entered a guilty plea but had not as yet been sentenced. The attorney was permitted to withdraw, but only after the defendant had entered his plea. The court continued the matter to October 7, 1966, in order that the defendant, who had pleaded not guilty, might determine what he desired to do about his representation. On that date the defendant requested the court to appoint a lawyer to represent him. In this connection he advised the court, "I need a lawyer. I think I really need one". He expressed satisfaction with the attorney suggested for such appointment, Attorney William Levinson. The court then appointed Levinson, and later that day, after the defendant had consulted with Levinson, the court fixed October 31, 1966, as the date for trial in event the defendant should not prevail on pretrial motions to be filed and disposed of prior to that date.

When the case was again called on November 21, 1966, Attorney Levinson was permitted to withdraw, it being represented that there was disagreement between him and the defendant on points concerning the handling of the case. The court then proceeded to appoint Attorney Frank Reynolds, who subsequently obtained a continuance of the trial date to January 16, 1967, in order that he might have an investigator interview prospective witnesses who might have information of benefit to the defendant. On January 16, 1966, when the case was called for trial Attorney Reynolds informed the court that the defendant had expressed dissatisfaction with his services and wished to engage his own at-

---

1. The indictment also named and charged a co-defendant, Walter Lesczynski, who entered a plea of guilty on September 15, 1966, some four months prior to the trial of the defendant Stahl.

torney. The defendant, who the record shows was without financial means to employ an attorney, represented that he had an attorney in mind who would contact his family to see if they could help. The court admonished that the defendant was going to trial the following Monday (a week later) no matter who represented him. Attorney Reynolds then stated:

> "He has asked me to withdraw and he wants to represent himself, but I will abide your Honor's wishes."

The court denied Attorney Reynolds leave to withdraw, and set the trial for January 23, 1967. The case proceeded to trial on January 23, 1967, with Attorney Reynolds representing the defendant, and without further representations concerning the substitution of other counsel, employed or appointed, or of a desire on the part of the defendant to represent himself and conduct his own defense to the exclusion of his court-appointed counsel.

 We recognize that arraignment is a critical stage of the criminal proceeding, and that the defendant was entitled to representation by counsel on that occasion. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114. But defendant entered a plea of not guilty, and, in our opinion, there is no basis for assuming that any conflict of interest which would have precluded further representation of the defendant by counsel representing his co-defendant operated in any manner to invalidate the arraignment for lack of effective assistance of counsel or to otherwise prejudice the defendant. The right to assistance of counsel secured by the Sixth Amendment is a matter of substance, not form. No substantive right of the defendant was here abridged by the acceptance of the plea of not guilty prior to substitution of counsel for the defendant.

 And, on the facts and circumstances we have detailed, the court's denial of permission for court-appointed counsel Reynolds to withdraw was not improper. Up to that point the defendant had recognized and attested to his need for trial counsel. His January 16, 1966, statement to counsel concerning his representing himself must be appraised in the context in which it was made—and in the light of the fact that when he was unable to secure employed counsel he proceeded to trial the following Monday with his court-appointed counsel representing him, and without mention of any desire to exercise the right to the sole conduct of his defense. The record, otherwise, demonstrates the defendant's pronounced articulateness on the subject of his representation. The actions of the defendant, and the argument he advances on appeal, make reference to United States v. Plattner, 2 Cir., 330 F.2d 271, 276, appropriate. It was there pointed out:

> "Moreover, one of the by-products of the recent developments in the law relative to the assignment of counsel in all but a few of the cases of indigent defendants, has been an awareness by the prison population and a very considerable number of persons who may in the course of time add to the prison population, of the possibility of manipulating the basic rule in a fashion such as to produce a record of confusion on the subject, and to give the accused the opportunity to claim a reversal in the event of conviction on the ground that his rights under the Fifth and Sixth Amendments had been infringed. The ingenuity of these individuals, especially the recidivists, betokens a high if misdirected intelligence."

We conclude that the defendant made no such intelligent waiver of counsel and election to proceed without counsel as would have permitted the court to rule otherwise than it did.

 And, the record fully reflects the effective assistance of counsel in the trial which followed. Defendant's claim to the contrary is groundless on the basis of the standard applicable in the resolution of such issue. In United States v.

Dilella, 7 Cir., 354 F.2d 584, 587, we said in this connection:

"The constitutional guarantee of the assistance of competent, effective counsel does not require perfection. That guarantee is satisfied when the conduct of counsel is such that the essential integrity of the proceedings as a trial is preserved, United States ex rel. Weber v. Ragen, 7 Cir., 176 F.2d 579, 586, United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976, 980–981, and the trial has not made a travesty of justice. Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 793, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86."

At the trial the defendant was identified by three employees of the association as one of the two men who robbed it on the afternoon of June 30, 1966. On October 31, 1966, the court had denied a motion of the defendant for a bill of particulars furnishing the names of the employees of the association from whom the money was allegedly taken, and the names of the employees and customers whose lives were allegedly put in jeopardy. Defendant contends that if the information requested had been furnished the two female tellers from whose cages the money was taken but who did not testify at the trial might have been interviewed prior to the trial to determine whether or not their testimony might have been favorable to the defendant. But the nature of the testimony these two persons might have given is wholly speculative. Moreover, the record discloses that there was a trial date continuance from November 21, 1966, to January 16, 1967, for the purpose of enabling defense counsel to have an investigator interview prospective witnesses. It was represented that there were several witnesses to the alleged robbery, and that counsel was advised that "there is some indication that there may be some information of benefit" to the defendant. Such an investigation was made, but the defense put no witnesses on the stand.

No showing is made that the denial of the bill of particulars resulted in any prejudice to the defendant. Nor was the court's denial of the motion an abuse of discretion. Our recent opinion in United States v. Riley Wells, 7 Cir., 387 F.2d 807, is pertinent. We there said:

"Despite the silence of the record with respect to the reasons underlying the court's disposition of the defendant's motion, an examination of the record does not disclose reversible error in the district court's action. On several occasions, we have enunciated the kind of showing a defendant must make to successfully attack the denial of a motion for a bill of particulars. In United States v. Micele, 327 F.2d 222, 226 (7th Cir.), cert. denied, 377 U.S. 952, 84 S.Ct. 1628, 12 L.Ed.2d 496 (1964), we found no error in the denial of a motion for a bill of particulars, stating that by means of the indictment the defendant was "sufficiently 'apprised of the nature of the offense' * * * and there was * * * 'no danger of a violation of the principles of double jeopardy.'" In United States v. White, 370 F.2d 559, 560 (7th Cir. 1966), we reached the same conclusion as we did in *Micele*, stating that there was no showing either that the defendant was "surprised by evidence he was unprepared to meet or that he was unable to prepare a proper defense because of the insufficiency of the charge." The defendant in this case has likewise failed to demonstrate that he has suffered any prejudice by reason of the district court's denial of his motion.

Of course, every denial of a defendant's request for a bill of particulars may in some measure make the preparation of his defense more onerous. But a demonstration of this generalized kind of prejudice is insufficient to override the broad discretionary power vested in a district court with respect to such requests. If only a generalized showing of prejudice were sufficient, perhaps the defendant would always be

entitled to a bill of particulars. Although the law of discovery in criminal cases has recently been liberalized, that development has yet to materialize."

As each government witness testified, the prosecutor, in the presence of the jury, tendered the "§ 3500 statement" of the witness (the statement the witness had previously made to government agents) to defense counsel for his review prior to cross-examination. In connection with the first of such tenders the court explained to the jury that the document was a copy of a statement the witness had previously made to the FBI, and that defense counsel was being furnished the copy "to see if she is telling the same story today on the stand as she told the FBI at the time they took her statement". The defendant made no objection to either the tender in the presence of the jury or the explanatory comment the court addressed to the jury. Defense counsel used each of the statements in cross-examination. Such tenders, in the presence of the jury, are condemned in Gregory v. United States, D.C.Cir., 369 F.2d 185, 191, on the theory that if a witness testifies on direct examination and then a statement given by that witness at an earlier point in time is tendered to the defense who elects not to cross-examine such witness, the jury may draw the inference that what the witness has testified to at trial is consistent with the prior statement. In Gregory, supra, the court said in this connection (369 F.2d 185, 191):

"Our purpose in Johnson [v. United States, 121 U.S.App.D.C. 19, 347 F.2d 803] in requiring that opportunity be provided to defense counsel to request and receive Jencks Act statements outside the presence of the jury is to preclude the jury from drawing an inference that the statement or statements received are consistent with the witness' testimony unless defense counsel uses the statements to cross-examine him."

The unfairness of such procedure has been recognized as "plain error" by an Illinois state court. People v. Lowe, 84 Ill.App.2d 435, 228 N.E.2d 563. To employ it may provide a situation requiring a reversal. And comment by the court, such as that here made, may serve only to compound the error. But in the instant case no objection was made, and the statements were used in cross-examination. Thus the reason for the requirement made in the District of Columbia, Court of Appeals cases is not operative in this case. The incident affords no basis for reversal.

In a motion filed by counsel for defendant, contemporaneously with the filing of the brief for the defendant, and which motion was taken with the case, it is requested that this Court enter an order herein directing the Warden of the United States Penitentiary, Leavenworth, Kansas, to refrain from interfering with or censoring correspondence between the defendant and court-appointed ccunsel concerning this appeal. The motion represents only that the envelopes of two letters addressed by counsel to the defendant, an inmate of the penitentiary, which envelopes bore the return-address of counsel, were received by the defendant with the endorsement "Not An Approved Correspondent" stamped on the face thereof; and that the United States Post Office was unable to deliver an article of certified mail to the defendant (apparently a transcript of the trial proceedings) because delivery thereof was restricted to the addressee only and the defendant was unable to sign for it. An exhibit attached to the government's answer to the motion indicates that in the future such correspondence is to be endorsed with the legend "Special Purpose Mail" to avoid routine prison handling. We are aware of no reason why counsel should be permitted to utilize certified mail with delivery restricted to the addressee in forwarding documents to the defendant. That mail carriers are not permitted to make delivery personally to the inmate and obtain his signature to evidence such delivery is not an unreasonable prison regulation. Nor does it impinge in any way on defendant's right to representation by counsel in this ap-

peal. We conclude that the motion is without adequate foundation. The motion is denied.

We express our appreciation to Attorney John J. Cleary, a member of the Chicago, Illinois, bar, for the service he has performed as court-appointed counsel for the defendant in this appeal.

The judgment order of conviction and sentence appealed from is affirmed.

Affirmed.